IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KENNETH SANDERS, SR., *et al.,* | ) | |
| | ) | |
| PLAINTIFFS, | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:04-cv-757-F |
| | ) | (LEAD CASE) |
| CITY OF UNION SPRINGS, *et al.,* | ) | |
| | ) | (WO - Recommended for Publication) |
| DEFENDANTS. | ) | |

| | | |
|---|---|---|
| SABRINA KENDRICK, as mother and next friend of L.C., | ) | |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:04-cv-758-F |
| | ) | (MEMBER CASE) |
| CITY OF UNION SPRINGS, *et al.,* | ) | |
| | ) | |
| DEFENDANTS. | ) | |

## MEMORANDUM OPINION AND ORDER

A police pursuit of a car driven by Desmond Kendrick (hereinafter "Kendrick") ended in a collision between Kendrick's vehicle and a vehicle in which Kenneth and Tina Sanders and their son were traveling. Injuries sustained in the collision took the lives of Desmond Kendrick and L.C., the two-year old daughter of his cousin, Sabrina Kendrick, who had been in Kendrick's car. The nearly identical lawsuits containing claims pursuant to 42 U.S.C. § 1983 and Alabama law filed by counsel representing Sabrina Kendrick and the Sanders family are now consolidated and pending before the undersigned for resolution of motions for summary judgment filed by the remaining defendants.

## JURISDICTION AND VENUE

This Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) & (4), and 1367.  No challenge is made to the personal jurisdiction over the parties or the appropriateness of venue; both of which are supported by the facts of this case.

## STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  According to the Supreme Court, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (quotation omitted).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

After the movant satisfies this requirement, the burden shifts to "the adverse party [who] must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S.

2

at 250 (quotation omitted).  "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  The Eleventh Circuit Court of Appeals has held that "[a]ll reasonable inferences arising from the undisputed facts should be made in favor of the nonmovant, but an inference based on speculation and conjecture is not reasonable." *Blackston v. Shook & Fletcher Insulation Co.,* 764 F.2d 1480, 1482 (11th Cir. 1985) (citation omitted).

## PROCEDURAL HISTORY

On August 6, 2004, the two cases now consolidated in this action were filed in this Court.  The first suit was filed by Kenneth Sanders, Sr., his ex-wife Tina Sanders,[1] and their son Kenneth Sanders, Jr.[2] (hereinafter collectively referred to as "the Sanders family").  The Sanders family's Complaint named several defendants: the City of Union Springs; Bullock County; E.L. Love (hereinafter "Love"), individually and in his capacity as Chief of Police for Union Springs; Sheriff Charles Hudson ("Hudson"), individually and in his capacity as Sheriff of Bullock County; Kenneth Johnson (hereinafter "Johnson"), individually and in his capacity as a police officer for the City of Union Springs.  The Sanders family's Complaint also purported to bring

---

[1]  Tina Sanders is also known as Tina Golden.

[2]  Kenneth Sanders, Jr. is also known as Eddie Sanders.

3

claims against four John Doe defendants.  Indeed, Count V of the Complaint, which alleges negligent use of firearms in violation of the Fourth and Fourteenth Amendments to the United States Constitution is brought *only* against John Doe # 3, an unknown law enforcement officers from an unknown law enforcement entity.

The Sanders family's Complaint sets forth several claims pursuant to 42 U.S.C. § 1983. Those claims are as follows: Fourth and Fourteenth Amendment - Excessive Force (Count I); Negligent Failure to Train and Supervise Regarding High Speed Pursuits (Count II); Negligent Use of Firearms (Count V); Negligent Failure to Train and Supervise Regarding Use of Firearms (Count VI); and Failure to Intervene (Count VII).  Additionally, the Complaint sets forth several claims under Alabama law[3] and invokes this Court's subject matter jurisdiction pursuant to 28 U.S.C. § 1367 over those claims.  The Complaint seeks various types of damages as wells as costs and attorneys' fees, but does not seek declaratory or injunctive relief.

On August 6, 2004, Sabrina Kendrick also filed suit as mother and next friend of L.C. Given that Sabrina Kendrick shares counsel with the Sanders family, it is not surprising that Sabrina Kendrick's lawsuit is nearly identical to the Sanders family's lawsuit.  The same defendants are named.  The same claims are set forth in the same numbered counts.  The only significant differences have to do with differences in the harm suffered by L.C. and the Sanders family.

---

[3] The claims pursuant to Alabama law are: negligent initiation of high speed pursuit (Count III); negligent failure to discontinue high speed pursuit (Count IV); and the tort of outrage (Count VIII).

On August 6, 2004, the same attorneys representing Sabrina Kendrick and the Sanders family, also filed a similar lawsuit against the same defendants on behalf of the Kendrick's surviving child. The plaintiff in that action was that child's mother Jennifer Brown (hereinafter "Brown"). Eventually, Brown obtained other counsel and dismissed her lawsuit on behalf of her child. Prior to dismissal the suit had been consolidated with the other cases for pretrial matters such as discovery.

After all named defendants had answered and the parties had filed their report of parties' planning meeting pursuant to Federal Rule of Civil Procedure 26(f), the defendants' motions to consolidate the cases for discovery were granted. The Court issued Uniform Scheduling Orders pursuant to its authority under Federal Rule of Civil Procedure 16. The parties did not object to any of the deadlines in the scheduling orders. Several months after the deadline for amending pleadings and on the day before the deadline for dispositive motions, Plaintiffs[4] filed an untimely motion to amend their Complaints by adding additional defendants in place of the fictitious defendants named in the Complaints. The Court denied the proposed amendment because it was untimely and because Plaintiffs failed to show good cause for their delay in seeking the amendment or moving for an extension of the deadline. All named defendants filed motions for summary judgment, which Plaintiffs opposed.[5] Plaintiffs' expert disclosures were

---

[4] When used in this Memorandum Opinion and Order, Plaintiffs refers to Sabrina Kendrick and the Sanders family.

[5] Plaintiffs sought and received a significant extension of time for the submission of their materials and briefs in opposition to the motions for summary judgment. Six and a half weeks after the deadline for submissions in opposition to summary judgment and only two months before the trial set in the case, Plaintiffs sought to supplement the evidence and

untimely as well, and this Court granted a defense motion to strike Plaintiffs' expert.

On October 20, 2005, the parties appeared before the undersigned for a Pretrial Hearing. During the course of that hearing, Plaintiffs made an oral motion to dismiss all of their claims against Bullock County and Sheriff Charles Hudson. Defendants did not oppose that motion and it was granted. Plaintiffs also made an oral motion to dismiss Count VI of the Complaints which the Court granted because it was not opposed by Defendants. Furthermore, Plaintiffs clarified that Count VII of the Complaints was not brought against Johnson. After the Pretrial Hearing, this Court entered the Order on Pretrial Hearing. This Court also granted Defendants' motions to consolidate the cases for trial.

In light of the foregoing, the Court must now decide the merits of the motions for summary judgment filed in these consolidated cases by the remaining defendants: Johnson, Love, and Union Springs. The Motion for Summary Judgment of Union Springs, Alabama; Officer Kenneth Johnson; and Police Chief Ernest Love is Docket # 41 in *Sanders v. City of Union Springs, et al.,* 2:04-cv-757-N. The Motion for Summary Judgment of Union Springs, Alabama; Officer Kenneth Johnson; and Police Chief Ernest Love is Docket # 30 in *Kendrick v. City of Union Springs, et al.,* 2:04-cv-758-N. The submissions in support of and in opposition to these motions are nearly identical.

## FACTS

---

argument submitted in opposition to summary judgment. Once again, Plaintiffs failed to show good cause for the delay in submitting the materials and this Court denied Plaintiffs' request to supplement.

It is well-settled that in reviewing the merits of motions for summary judgment, this Court must view the facts in the light most favorable to the non-moving party.  In this case, that party is the plaintiff.  Additionally, this Court may not make credibility determinations or resolve factual disputes.  Only in the absence of genuine issues of material facts may defendants, such as the movants in this case, establish that they are entitled to judgment as a matter of law.  The Court has carefully reviewed the numerous depositions, affidavits, and other documents submitted in support of and in opposition to the pending motions.  In this Court's review, the record is replete with disputes over what occurred.

On a date approximately one week prior to September 16, 2002, Johnson and another police officer for the City of Union Springs named Frank Walker (hereinafter "Walker") set up a driver's license check point on Thomas Street near a school in Union Springs.  The undisputed testimony before this Court establishes that the driver's license check point was set up in response to complaints to the Union Springs Police Department that motorists were speeding through residential areas near a school zone.  Both Walker and Johnson were wearing their police officer uniforms and each had a marked police car at the site of the check point.

While Walker and Johnson were operating the check point, a red Honda CRX turned onto Thomas.  Walker and Johnson observed a red Honda CRX come to a sliding stop and pull into a driveway about 100 to 250 feet from the license check point.  The driver of this vehicle shielded his face; neither Walker nor Johnson could identify the driver.  Walker motioned for the driver of the Honda to pull forward to the driver's license check.  Instead, the driver of the

Honda backed out of the driveway and immediately sped off.  Walker told Johnson that he was going to go and see why the driver of the red Honda CRX had engaged in this maneuver and got into his police automobile and followed the red Honda CRX.  Walker's ticket book had been on the back of his police vehicle and it blew off when he drove away.  Johnson picked up these documents before getting in his own police vehicle.    After Johnson got into his police vehicle, he was able to hear Walker's radio transmissions concerning Walker's pursuit of the red Honda.  Johnson drove his police vehicle for about seven miles at about sixty miles per hour in an attempt to catch up with Walker and assist him.  At some point, Walker's radio transmissions began to fade and Johnson did not know where Walker was.  Eventually Johnson found Walker, and Walker told Johnson about what had happened when he pursued the red Honda CRX.  Walker had followed the red Honda CRX until it had turned onto a dead-end street.  Walker attempted to set up a roadblock and then got out of his police car.  The driver of the red Honda CRX then drove toward Walker at a high rate of speed and nearly hit Walker. If Walker had not jumped onto the hood of his police car, he would have been seriously injured.

Johnson did not make a report of the incident with the red Honda CRX.  Johnson does not know if Walker made such a report.  Walker did verbally notify Love, who was Chief of the Union City Police Department at that time.  Love told Walker to swear out a warrant after ascertaining who was driving the red Honda CRX

Approximately one week later, on September 16, 2002, Johnson started his shift on patrol

8

at around 2:00 p.m.   He was wearing his police officer's uniform and driving a marked police vehicle.  At around 3:30 p.m., Johnson was traveling north on Prairie Street in the city limits of Union Springs, Alabama.  Johnson saw the red Honda CRX traveling south on Prairie Street.  Johnson recognized the vehicle as the same one which had been involved with the incident with Walker the week before.  As the red Honda CRX drove past Johnson's police vehicle, the driver of the red Honda CRX attempted to hide his face in the same manner as he had done the week before.  It is undisputed that Kendrick was the driver of the red Honda CRX on September 16, 2002.  It is also undisputed that at no point during the pursuit on September 16, 2002, did Johnson know the identity of the driver of the red Honda CRX he was pursuing.

Johnson activated his emergency lights and siren and waited for the traffic to clear so that he could turn and head south on Prairie Street.  It is Johnson's undisputed testimony that he initiated the pursuit of the red Honda CRX because of the incident the week before where the driver of the vehicle had nearly run Walker over.  Johnson also has indicated that he pursued the vehicle because he suspected that the red Honda CRX was connected to a vehicle robbery.  Kendrick accelerated rapidly in an attempt to elude Johnson.  At approximately 3:38 p.m., Johnson called in to dispatch on his radio with the code "10-100" which indicated that he was in a pursuit of a vehicle which had failure to stop.  Johnson saw Kendrick throw something out of the car window near Hendley Trailer Park.  Johnson was able to get close enough to read the tag and conduct a license plate check through dispatch.  At 3:39 p.m., Johnson called in tag

number 9AB1705.[6] It is Johnson's testimony that at some point during the chase, the dispatcher told him that the tag number Johnson had called in had been reported stolen that day.[7]

Despite the fact that Johnson's marked police vehicle was in pursuit of the red Honda CRX with emergency lights and siren activated, Kendrick did not stop.  In fact, Kendrick accelerated and by driving faster than Johnson was driving,[8] Kendrick managed to increase his lead to approximately a quarter of a mile.  According to Johnson's testimony, during the chase he saw Kendrick run several stop signs.  Johnson saw Kendrick's vehicle nearly hit a school bus and run a couple of cars off of the road.  Kendrick also made several turns onto a variety of

---

[6] It is now clear that the tag on the red Honda CRX was tag number 9AB1705.  It is also clear that tag number 9AB1705 was registered to Annie Watkins (hereinafter "Watkins"), 3172 County Road 47, Midway, Alabama and was registered as being on a 1986 4-door Toyota Corolla.  Watkins is the second cousin of Sabrina Kendrick's mother.  Sometime prior to the chase, Watkins had gone to the Union Springs Police Department and reported that her vehicle had been burglarized at a garage in Bullock County.  Watkin's complaint was that her radio equipment and some other items had been taken out of her vehicle.  Because the crime had happened out in the county, rather than in Union Springs, Love told Watkins to go to the Bullock County Sheriff's Department to do an incident report.  Watkins did not realize that her tag had been removed from her vehicle until after the crash on September 16, 2002 when her tag was found on the red Honda CRX.  According to Watkins, she never reported her vehicle tag as having been stolen prior to the chase at issue in this lawsuit.

[7] Watkin's testimony that she did not know her tag had been stolen and did not report it as stolen prior to the chase is in conflict with Johnson's testimony in some respects.  Nevertheless, it is undisputed that there had been a report about the vehicle to which the tag belonged having been burglarized.

[8] Johnson was driving at approximately 60 miles per hour.  Kendrick was driving faster than that and at times appeared to be traveling in excess of 80 miles per hour.  Both Johnson and Kendrick were exceeding the post speed limits on the roads over which they traveled.

roads at some point leaving the police jurisdiction of Union Springs and entering Bullock County.

The Bullock County Sheriff's Department informed Johnson that deputies were planning to perform road blocks in an attempt to stop the red Honda CRX. A County Sheriff's Deputy blocked the road with his marked car and motioned for Kendrick to stop. Kendrick drove around the road block and the Sheriff's Deputy jumped out of the way to avoid being hit. Another Sheriff's Deputy used his marked car to block the road. When this Deputy saw the red Honda CRX, he put on his emergency lights and waved at the vehicle to stop. Kendrick drove around the road block. Approximately two minutes later, the Deputy saw the Union Springs police car Johnson was driving, the Deputy waved to Johnson indicated which way Kendrick had gone because they were in an area where radio communication was impossible.[9]

Johnson had lost visual contact with the red Honda CRX, but he continued to drive looking for the vehicle. Johnson testified at his deposition that he turned off his emergency lights and siren at this point.[10] After several minutes and miles, Johnson approached a curve with a hill crest. When he rounded the curve, he saw the red Honda CRX and a white SUV with which the red Honda CRX had collided. According to witnesses, the red Honda CRX crossed

---

[9] There is ample evidence in the record before this Court that the radios used by the Union Springs Police Department are not very strong and that there are various areas where radio contact is impossible.

[10] This testimony is consistent with the deposition testimony of the driver of the white SUV, but inconsistent with a witness statement given by Johnson to the Alabama Department of Public Safety wherein Johnson stated that he kept his lights and siren on as he topped the hill after losing visual contact with the red Honda CRX.

over into the lane occupied by the white SUV and struck it nearly head on.  The impact of the collision killed Kendrick.

L.C., the two year old daughter of Kendrick's cousin had been in the vehicle with Kendrick during the entire pursuit.  It is undisputed that Johnson never saw L.C. in the vehicle. L.C. was not in a child safety seat, nor was she buckled into the vehicle with a seatbelt.  There are disputed accounts of where L.C. was immediately after the collision.  There are also differences in the testimony regarding what Johnson did when he arrived on the scene.  Johnson testified that he used a fire extinguisher on the white SUV and attempted CPR on L.C.  Tina and Kenneth Sanders testified that none of the law enforcement officers on the scene made any attempts to help either the Sanders family or L.C.  Given that this case is about events leading up to the collision and not events after the collision, these factual disputes are not genuine issues of material fact.  It is undisputed that L.C. died on the scene from injuries sustained in the collision.  Officers from the Bullock County Sheriff's Department arrived at the scene of the collision and reported the accident at 4:05 p.m.

Kenneth Sanders was driving the white SUV which the red Honda CRX stuck.  Riding in the vehicle were his ex-wife, Tina Sanders, and their son, Kenneth Sanders, Jr., who goes by Eddie.  Each of them sustained injuries in the collision.  None of them were wearing their seatbelts at the time of the collision.  Kenneth Sanders saw the red Honda CRX approaching and attempted to avoid the collision, but was not successful.  Tina and Eddie Sanders were sleeping at the time of the collision.

12

It is undisputed that Johnson's pursuit of Kendrick lasted for approximately twenty-five minutes. While there is nothing specific in the record from which the Court could ascertain the exact distance of the pursuit, it appears to have covered twenty miles or less. Plaintiffs alleged that shots were fired during the course of the pursuit. Johnson has given sworn testimony denying that he fired any shots during the pursuit. Plaintiffs have submitted photographs to the Court which show a small round hole of in the rear of the red Honda, however, there is no evidence before this Court that establishes that this hole was created by a bullet or that establishes that this hole was created during the pursuit.

On the afternoon of September 16, 2002, Johnson and another officer named Ralph Johnson[11] were the two officers on duty for the City of Union Springs Police Department. When Johnson's pursuit of Kendrick began, Love was Chief Police for the City of Union Springs and Johnson's uncle by marriage. Love was on his way to his residence which is located eight miles north of Union Springs. When Love was about two miles from his residence, the dispatcher called Love on the radio and said that there was a pursuit of a vehicle. Love listened to the communications over his police radio and turned his vehicle around to head toward the area where the chase was happening south of Union Springs. At points he could not hear Johnson's transmission because radio communications do not work well in some areas.

---

[11] Ralph Johnson is not a defendant to this action. He is Johnson's cousin and at the time of the events giving rise to this lawsuit he was a higher ranking officer than Johnson. At some point during the chase, Johnson called Ralph Johnson on the radio and asked him to search for the unknown item thrown from the red Honda CRX during the chase. Ralph Johnson did not participate in the pursuit.

Love testified that he tried several times to contact Johnson by radio, but that he was unable to do so.  Eventually, Love heard the radio call from the Bullock County Sheriff's Department indicating that there had been an accident and a call for an ambulance.  At some point thereafter, Love arrived at the scene of the collision where he found Johnson in tears.  Love surveyed the vehicles involved in the crash and talked to Johnson.  Johnson told Love that he would not have pursued the red Honda CRX if he had known that there was a child in the vehicle.

It is undisputed that Union Springs had a written policy manual for its police officers which included, *inter alia,* a policy on the use of police vehicles.  Included in the use of vehicles policy were rules governing pursuits.  The pertinent portions of that written policy are set forth below:

> 8.00.00 GENERAL PROVISION: Officers andd [sic] employees have the responsibility to operate their vehicles in a safe and skillful manner.  When responding to emergency situations or when in pursuit of violators, officers will comply with all applicable department procedures and regulations.  In these situations, an officer's first concern should be the safety of the public.

> 8.02.00 PURSUIT SITUATIONS: Driver skill coupled with an appreciation for the fundamentals of safe driving reduce the inherent risks of high-speed pursuits.  The decision to engage in high-speed pursuit of a law violator shall be made only after immediate evaluation of: the nature of the offense; roadway conditions; climatic conditions; danger to the pursuing officer and to the general public; and the type and condition of the police vehicle being utilized.  The ability to react to emergency situations with judgment often means the difference between a tragic accident and a successful mission.

> 8.02.01 EXTENT OF PURSUIT: Pursuit will be abandoned when:

> The officer or the general public will, in the reasonable judgment
> of the officer, be exposed to unnecessary risks; i.e.: high-speed
> pursuit on a congested street or highway or on arterial roadways
> having heavy cross vehicular movement or pedestrian traffic;
>
> Environmental conditions indicate the futility of continued pursuit;
> i.e. road and weather hazards, distance between pursued and
> pursuer, and darkness.
>
> Pursuit must be discontinued if the potential negative consequences
> of continuing the chase out-weigh the desirability of immediate
> apprehension.

Love testified that the unwritten policy was that members of the Union Springs police department did not chase a vehicle at high rate of speed for minor traffic violations.

It is also undisputed that when Johnson joined the Union Springs police force he reviewed the written policy manual. Furthermore, it is undisputed that Johnson received several months of law enforcement training at a police academy. In addition to this training, Johnson received other training from various sources on issues relating to his law enforcement positions with Union Springs and other law enforcement agencies. Johnson began his career in law enforcement in 1993 and served in a variety of law enforcement positions for various law enforcement agencies since that time. There is no evidence before this Court from which a reasonable jury could find that Love should have known prior to the September 16, 2002 chase that Johnson required additional training on high-speed pursuit.

## DISCUSSION

### A.  Claims Pursuant to Federal Law

Count I of each Complaint alleges that Johnson violated the rights of the Plaintiffs under

15

the Fourth and Fourteenth Amendments to the United States Constitution by excessive and unnecessary use of force and by the initiation and the continuance of the high-speed pursuit of Kendrick.  This is the sole remaining federal claim against Johnson.  Count II of each Complaint alleges that Union Springs and Love owed Plaintiffs a duty to train and supervise police officers for the City of Union Springs and that by breaching that duty, Union Springs and Love violated Plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution.  Count VII of each Complaint alleges that Love failed to intervene in the high-speed pursuit and failed to order Johnson to discontinue the pursuit in violation of Plaintiffs' constitutional rights.  Count V of each Complaint alleges that one of the fictitious defendants violated Plaintiffs' constitutional rights by discharging a firearm at Kendrick's vehicle.  These are the remaining federal claims in this action.  Each claim is brought pursuant to 42 U.S.C. § 1983.

42 U.S.C. § 1983 provides a remedy when a person acting under color of state law deprives a plaintiff of a right, privilege, or immunity secured by the Constitution, laws, or treaties of the United States.  *See, e.g.,* 42 U.S.C. § 1983;[12] *Graham v. Connor*, 490 U.S. 386,

---

[12] Section 1983 provides in relevant part:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

393-94 (1989) ("§ 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred") (internal quotes omitted); *Cummings v. DeKalb County*, 24 F.3d 1349, 1355 (11th Cir. 1994).

Thus, to employ § 1983 to secure a remedy for a deprivation of a federally secured right, a plaintiff must generally show that the alleged deprivation was committed by a person acting under color of state law.  *See, e.g., West v. Atkins,* 487 U.S. 42 (1988); *Focus on the Family v. Pinellas Suncoast Transit Auth.,* 344 F.3d 1263, 1276-77 (11th Cir. 2003).  That Johnson and Love were acting under color of law is not in dispute in this case.  Rather, the question is whether these defendants violated any constitutional rights enjoyed by Plaintiffs.  **1. Claims against Johnson**

In analyzing Plaintiffs' claims against Johnson, the Court must first identify the specific rights allegedly infringed.  Those specific rights in turn provide the appropriate analytical lens through which the facts must be viewed and direct the Court to the proper doctrinal framework with which to address the claims.  In this case, Plaintiffs alleged deprivation of their rights under the Fourth and Fourteenth Amendments of the federal constitution.  The Court will analyze each claim in turn to determine whether Plaintiffs have sufficiently presented evidence of actual violations.

**a.  Fourth Amendment Claims**

The Fourth Amendment prohibits the government seizure of a person unless that seizure

is reasonable.  *See* U.S. Const. amend. IV.  Plaintiffs allege that Johnson violated their rights under the Fourth Amendment by "Grossly negligent and reckless acts" including the "excessive and unnecessary use of force by negligently, wantonly, and in bad faith initiating and continuing a high speed pursuit of a suspect under dangerous conditions" without regard to the risk to the Plaintiffs and members of the public.  Specifically, Plaintiffs allege that Johnson pursued a dangerous high speed chase because of a vendetta against Kendrick.  Plaintiffs argue that the chase was an attempt to seize Kendrick and L.C. and that it resulted in the termination of the freedom of movement of L.C. and the Sanders family.  Plaintiffs further contend that the use of force to effect this seizure was unreasonable.      Where Plaintiffs' argument fails, however, is in asserting that the termination of the Sanders family's freedom of movement and the freedom of L.C.'s movement amounted to a "seizure" as that term is understood under the Fourth Amendment.  The Supreme Court has stated that

> "a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even when there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied*."

*County of Sacramento v. Lewis,* 523 U.S. 833, 844 (1998) (quoting *Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989)) (emphasis in original).  "It is the intervention directed at a specific individual that furnishes the basis for a Fourth Amendment claim."  *Troupe v. Sarasota County, Fla.,* 419 F.3d 1160, 1167-68 (11th Cir. 2005) (quoting *Landol-Rivera v. Cruz Cosme,* 906 F.2d

791, 796 (1ˢᵗ Cir. 1990) (holding that the district court erred in finding a Fourth Amendment seizure of the passengers in a vehicle driven by a man wanted on felony charges despite the fact that the defendant officers shot at the vehicle and hit the driver who later crashed the vehicle killing one of the passengers). "[S]topping a vehicle's driver does not constitute a seizure of a passenger." *Troupe*, 419 F.3d at 1167.

The undisputed evidence before this Court establishes that Johnson was attempting to seize only Kendrick. There is no evidence from which a reasonable jury could find that Johnson knew that L.C. was in the vehicle or that she was a suspect that Johnson was also trying to arrest. Moreover, neither the intentional steps Johnson took to attempt to seize Kendrick, nor the consequences of those steps can show that Johnson intended to seize the Sanders family as well. It does not follow that because Johnson intended to stop Kendrick, he therefore intended to stop any other car that could potentially become involved in a subsequent collision with Kendrick's vehicle. At best, the subsequent collision was instead the accidental and wholly unintended consequence of an act that happened to be committed by a police officer.[13] Thus, Johnson did not intentionally apply any means in an attempt to terminate the freedom of movement of L.C. or the Sanders family. The unfortunate collision between the vehicle in which Kendrick and L.C. were traveling and the vehicle in which the Sanders family was traveling was not a means intended by Johnson to stop the Sanders family or L.C., but rather an unintended consequence of an attempt to seize Kendrick. This precludes any finding that L.C.

---

[13] This should not be taken as a rejection of Defendants' argument that Kendrick's conduct was the proximate cause of the harms for which these lawsuits seek remedies.

or the Sanders family were "seized" by Johnson as a result of the crash. Plaintiffs were simply not the intended objects of Johnson's attempt to seize Kendrick, so the Fourth Amendment is not implicated and cannot provide the basis for a § 1983 claim. Thus, Johnson is entitled to judgment as a matter of law on Plaintiffs' claims against him pursuant to § 1983 for allegedly violating their rights under the Fourth Amendment to the United States Constitution and his motion for summary judgment on that claim is due to be GRANTED.

### b. Fourteenth Amendment Claims

Plaintiffs also assert that Johnson violated their substantive due process rights under the Fourteenth Amendment. The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment includes within its ambit "protection of the individual against arbitrary action of the government." *Lewis,* 523 U.S. at 845. In reviewing exercises of executive power, however, we must bear in mind that "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense'" thus amounting to a violation of constitutional dimensions. *Id.* at 846. Because the Due Process Clause was not meant to serve as a "font of tort law to be superimposed upon whatever systems may already be administered by the States," *Paul v. Davis*, 424 U.S. 693 (1973), only those governmental actions which involve substantial culpability are actionable under the Fourteenth Amendment. *Lewis,* 523 U.S. at 848-49. Since the 1952 case of *Rochin v. California,* the Supreme Court has characterized this cognizable level of conduct as that which "shocks the conscience." 342 U.S. 165, 172 (1952); *see also Lewis,* 523 U.S. at 846-47.

20

In *Lewis*, the United States Supreme Court rejected a substantive due process claim brought by the victim of a high-speed pursuit that resulted in a vehicular accident. The Supreme Court stated that the issue before it was:

> whether a police officer violates the Fourteenth Amendment's guarantee of substantive due process by causing death through deliberate or reckless indifference to life in a high-speed automobile chase aimed at apprehending a suspected offender.

523 U.S. 836. The Supreme Court answered that question in the negative and held that in the context of a high-speed police chase "only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking the conscience, necessary for a due process violation." *Id.* Although Plaintiffs allege that Johnson engaged in the pursuit of Kendrick because of a personal vendetta, there is no evidence from which a reasonable jury could find that Johnson acted with a purpose to cause harm unrelated to the legitimate object of arresting Kendrick. The undisputed evidence before this Court is that Johnson was acting solely with the legitimate object of arresting Kendrick for attempting to run over a police officer. While Johnson's pursuit, like all high-speed police pursuits, was inherently dangerous, that fact alone does not constitute an attempt to cause harm so arbitrary that it shocks the conscience in a constitutional sense. *See, e.g., Levy v. City of Hollywood,* 90 F. Supp. 2d 1344, 1346 (S.D. Fla. 2000).   Thus, Johnson is entitled to judgment as a matter of law on Plaintiffs' claims against him pursuant to § 1983 for allegedly violating their rights under the Fourteenth Amendment to the United States Constitution and his motion for summary judgment on that claim is due to be GRANTED.

**2. Claims in Count V**

Count V of each Complaint clearly sets forth allegations of alleged use of a firearm in violation of the Plaintiffs' constitutional rights. The Complaints allege that this claim is brought solely against one of the fictitious defendants. Of course, the fictitious party practice is not allowed by the Federal Rules of Civil Procedure. Given this fact and the fact that the Complaint was never amended to allege that Johnson or Love were the defendants responsible for firing the weapon, this Court is of the opinion that there is not a viable claim in this lawsuit arising out of the allegations of Count V. Plaintiffs appear to now argue that this claim is brought against Johnson. It is axiomatic that a party cannot amend its pleadings by arguments made in briefs in opposition to summary judgment. Thus, the Court cannot see how Plaintiffs can contend that Count V is a viable claim against Johnson. Nevertheless, even assuming *arguendo* that the is some possible basis for finding that Johnson is a proper defendant to the allegations of Count V, the Court is of the opinion that Johnson's testimony that he did not fire his weapon during the pursuit is a sufficient basis on which to grant summary judgment in his favor on the claims set forth in Count V of the Complaints. The Court further finds that Plaintiffs have failed to present sufficient evidence from which a reasonable jury could find that Johnson fired his weapon during the pursuit. Accordingly, the pending motions for summary judgment are due to be GRANTED as to Count V of the Complaint.

### 3. Claims against Love for Failure to Intervene

In Count VII of each Complaint, Plaintiffs allege that Love failed to intervene in the high speed pursuit and failed to order Johnson to discontinue pursuit.  Plaintiffs further allege that Love's actions subject him to liability under *Fundiller v. City of Cooper City,* 777 F.2d  1436 (11th Cir. 1985).  Defendants argue that on the facts of this case, *Fundiller*-type liability for failure to intervene cannot be established against Love.  Specifically, Defendants argue that Love was nowhere near the chase or the accident, that Johnson had no contact with Love during the chase, and that there has not been an adequate showing that Johnson used excessive force or otherwise violated the Fourth Amendment.

In *Fundiller,* the Eleventh Circuit Court of Appeals held that a man who alleged that he had been shot by an undercover police officer without any provocation or warning during the course of a cocaine purchase stated a claim pursuant to 42 U.S.C. § 1983 against not only the officer who shot him, but also against the officers who were stationed nearby and moved in to the area immediately after the shooting.  *Id.* At 1441-42.  It was alleged that these other officers dragged the plaintiff from his car and handcuffed him rather than rendering him aid.  *Id.* at 1441.  It was also alleged that these officers stated that they hoped the plaintiff would bleed to death and shouted obscenities at him while he lay on the ground moaning in pain.  *Id.*   In explaining why the motions to dismiss the claims against these officers should not have been granted, the Eleventh Circuit explained that

> It is not necessary that a police officer actually participate in the use of excessive force in order to be held liable under section 1983.

Rather, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's excessive force, can be held liable for his nonfeasance.

*Id.* at 1441-42.

Since *Fundiller* was decided, the Eleventh Circuit Court of Appeals has reiterated that failure to intervene can subject law enforcement officers to liability in certain circumstances. *See, e.g., Priester v. City of Riviera Beach, Fla.,* 208 F.3d 919, 927-28 (11th Cir. 2000) (vacating ruling for defendant on judgment as a matter of law on the sufficiency of the evidence and qualified immunity where defendant officer had observed the entire attack on plaintiff, which was an obvious use of excessive force, and had the time and ability to intervene, but did nothing); *Byrd v. Clark,* 783 F.2d 1002, 1007 (11th Cir. 1986) (question of fact precluded summary judgment in favor of officer present during encounter between another police officer and plaintiff wherein the other officer allegedly used excessive force because "a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence" may be liable under § 1983).  Importantly, the Eleventh Circuit has clearly explained that "in order for an officer to be liable for failing to stop police brutality, the officer must be 'in a position to intervene.'" *Ensley v. Soper,* 142 F.3d 1402, 1407 (11th Cir. 1998).  Thus, for Love to be liable under this theory, the evidence must be such that a reasonable jury could find that he was either present at the scene or otherwise able to ascertain that Johnson's pursuit was in violation of the rights conferred by the constitution *and* actually able to intervene to stop the violation.  *Id.* at 1407-08.

The undisputed facts in this case do not show that Love was present at the scene of any of Johnson's acts or that he was otherwise able to ascertain that Johnson's pursuit was in violation of constitutional rights. While Love was able to hear part of the communications with dispatch, this information was insufficient to allow Love to assess whether a constitutional violation was occurring. Moreover, even if Love could have had access to sufficient information to make such an assessment of Johnson's conduct, it is undisputed that rather than standing idly by and allowing the conduct to continue, Love was attempting to contact Johnson on the radio, but was unable to do so. Accordingly, on these facts, no reasonable jury could find that Love was actually able to intervene to stop Johnson. Accordingly, Love is entitled to judgment as a matter of law on the claims set forth in County VII of each Complaint and the motions for summary judgment are due to be GRANTED to the extent that they are directed to such claims.

### 4. Claims against Love and Union Springs for Failure to Train or Supervise

In Count II of each Complaint, Plaintiffs allege that Love and the City of Union Springs should be held liable for their failure to properly train and supervise their police officers with respect to high speed pursuits and to implement proper procedures for said pursuits. Plaintiffs further allege that this failure to train and supervise caused a violation of Plaintiffs' rights under the Fourth and Fourteenth Amendments. Defendants argue that they are entitled to summary judgment because an inquiry into a governmental policymaker's custom or policy is only relevant when a constitutional deprivation has occurred. The Eleventh Circuit Court of Appeals

has so held.  *See, e.g., Rooney v. Watson,* 101 F.3d 1378, 1381-82 (11th Cir. 1996).  Because this Court has determined that undisputed evidence establishes as a matter of law that Johnson's conduct did not deprive Plaintiffs of any constitutional right, they cannot maintain a cause of action pursuant to 42 U.S.C. § 1983 against either Johnson or those charged with training and supervising him.  Accordingly, Defendants' motions for summary judgment are due to be GRANTED as to the federal claims against Love and Union Springs arising out of their training and supervision of Johnson.

**B.  Claims Pursuant to State Law**

In addition to Plaintiffs' claims pursuant to 42 U.S.C. § 1983, Plaintiffs bring a number of claims pursuant to Alabama law.  This Court has supplemental subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1367.  The statutory provision addressing supplemental jurisdiction provides that

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).  Thus, Section 1367(a) provides a basis for this Court to exercise jurisdiction over Plaintiffs' claims pursuant to Alabama law because it has jurisdiction over their claim pursuant to 42 U.S.C. § 1983.  However, the requirement contained in § 1367(a) that this Court exercise its supplemental jurisdiction over Plaintiffs' state law claims is subject to

certain enumerated instances in which it is appropriate for a federal court to decline to exercise

its supplemental jurisdiction over a case.  Those circumstances are set forth in Section 1367(c),

which provides that

> The  district  courts  may  decline  to  exercise  supplemental
> jurisdiction over a claim under subsection (a) if –
>
> > (1) the claim raises a novel or complex issue of State law,
> >
> > (2) the claim substantially predominates over the claim or
> > claims over which the district court has original jurisdiction,
> >
> > (3) the district court has dismissed all claims over which it
> > has original jurisdiction, or
> >
> > (4) in exceptional circumstances, there are other compelling
> > reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  The Court finds that claims before this Court pursuant to § 1367(a)

present novel or complex issues of Alabama law.  Additionally, the federal claims over which

this Court had original jurisdiction have now been resolved against Plaintiffs.  Pursuant to 28

U.S.C. § 1367(c)(1) & (3), the Court declines to exercise supplemental jurisdiction over

Plaintiffs' claims pursuant to Alabama law.  All of Plaintiffs' claims pursuant to Alabama law

will accordingly be DISMISSED WITHOUT PREJUDICE.  This dismissal should not work to

Plaintiffs' disadvantage should they elect to bring suit in state court because the period of

limitations for any of these claims is tolled during the pendency of this action.  *See* 28 U.S.C.

§ 1367(d).

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED as follows:

1.   The Motion for Summary Judgment of Union Springs, Alabama; Officer Kenneth Johnson; and Police Chief Ernest Love (Doc. # 41) in *Sanders v. City of Union Springs, et al.,* 2:04-cv-757-N is GRANTED to the extent that it is directed to the claims brought pursuant to 42 U.S.C. § 1983 and DENIED to the extent that it is directed to the claims brought pursuant to Alabama law.

2.   The Motion for Summary Judgment of Union Springs, Alabama; Officer Kenneth Johnson; and Police Chief Ernest Love (Doc. # 30) in *Kendrick v. City of Union Springs, et al.,* 2:04-cv-758-N is GRANTED to the extent that it is directed to the claims brought pursuant to 42 U.S.C. § 1983 and DENIED to the extent that it is directed to the claims brought pursuant to Alabama law.

3.   The Court declines to exercise supplemental jurisdiction over Plaintiffs' claims pursuant to Alabama law and such claims are DISMISSED WITHOUT PREJUDICE.

4.   In light of the foregoing, the Motion to Continue (Doc. # 89) is DENIED as MOOT.

5.   A separate final judgment will be entered consistent with this Memorandum Opinion and Order.

DONE this the 18th day of November, 2005.


_____
/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE

28